***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Harris and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, and having reviewed the competent evidence of record, the Full Commission adopts the Opinion and Award of Deputy Commissioner Harris with modification as to the assessment of attorneys' fees.
 *********** RULING ON EVIDENTIARY MOTION *Page 2 
Defendants filed a Motion to Conduct Limited Additional Discovery seeking access to State records pertaining to plaintiff's qualifications for foster parent licensure. Plaintiff objected to the Motion.
Upon consideration of the facts and circumstances of this matter, it is HEREBY ORDERED that defendants' Motion is DENIED.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. Sprint North Supply was insured at the time of the July 8, 1993 injury and RskCo Claim Services was the carrier for defendant-employer.
3. On July 8, 1993, plaintiff was employed by defendant-employer as a distribution person. He was employed by defendant-employer from July 15, 1991 until October of 1993. Plaintiff's last day of actual work with defendant-employer was July 15, 1993.
4. On or about July 8, 1993, plaintiff was operating a stock picker and was hit from the rear by another stock picker when he felt back pain and a sharp pain between his shoulders.
5. Defendants continue to pay weekly benefits to plaintiff as a result of his July 8, 1993 injury, pursuant to the North Carolina Industrial Commission's Opinion and Award dated November 23, 2004. *Page 3 
6. On November 2, 1993, Dr. Douglas McFarlane of Cape Fear Orthopaedic Clinic in Fayetteville determined that plaintiff had reached maximum medical improvement and assigned a 5% permanent partial impairment rating to his back.
7. Plaintiff has not been compensated for any permanent partial impairment.
8. Defendants have continued to pay medical benefits for ongoing medical treatment since 1993.
9. On July 8, 1993, plaintiff's average weekly wage was $484.00, yielding a compensation rate of $322.68.
 *********** EXHIBITS
The following documents were accepted into evidence as stipulated exhibits:
 1. Exhibit 1: Executed Pre-Trial Agreement
 2. Exhibit 2: Industrial Commission Forms, filings and Orders
 3. Exhibit 3: Plaintiff's medical records
 4. Exhibit 4: Social Security Administration Decision dated 7/6/06
Transcripts of depositions of the following were also received post-hearing:
 1. Dr. James E. Rice
 2. Dr. Charles Haworth
 3. Dr. Angel Vasquez
 4. Dr. C. Thomas Gualtieri
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following: *Page 4 
 FINDINGS OF FACT
1. The Full Commission's November 23, 2004 Opinion and Award, which was not appealed by either party, is incorporated herein as if set out in full. Said Opinion and Award found that plaintiff suffered from a work-related chronic thoracolumbar back condition.
2. At the time hearing before Deputy Commissioner Harris, plaintiff was 51 years of age. He graduated high school and has no formal education beyond that.
3. In November of 1993, plaintiff found a job on his own as a parts manager at a Harley-Davidson dealership. This job comported with plaintiff's work restrictions, and plaintiff was able to do it until early 2003, when his pain level increased and forced him to stop working.
4. Defendants accepted plaintiff's claim for an upper back and neck injury via a Form 21 Agreement approved by the Industrial Commission on June 13, 1994.
5. Dr. James Rice has been plaintiff's treating orthopedist since 1995. Plaintiff saw Dr. Rice on February 17, 2003, complaining of increased back pain in the lower left thoracic area and the upper lumbar regions with pain radiating down his left leg. Dr. Rice ordered an MRI for the thoracic and lumbar spine and placed plaintiff out of work until March 10, 2003. The MRI revealed an increase in the size of the T-11 disc prominence which was consistent with plaintiff's increased pain complaints.
6. After plaintiff was taken out of work by Dr. Rice in February 2003, defendants denied further medical care and denied temporary total disability benefits. A hearing and subsequent appeal were pursued resulting in the November 23, 2004 Full Commission Opinion and Award which directed defendants to pay temporary total disability benefits and medical expenses. *Page 5 
7. Dr. Rice provided out of work notes for plaintiff continuously from February 17, 2003 through June 17, 2004. On August 25, 2004, plaintiff was written out of work indefinitely. Dr. Rice saw plaintiff on January 12, 2005 and plaintiff's examination was essentially unchanged, with plaintiff still experiencing back and left leg pain. Dr. Rice recommended a referral for plaintiff to Dr. Toni Harris for pain management to determine whether it would relieve his chronic pain.
8. Defendants did not authorize the referral to Dr. Harris and plaintiff has never received a pain management consultation.
9. Defendants approved a return visit to Dr. Rice on January 26, 2007. Again, plaintiff's examination was essentially unchanged, with plaintiff still experiencing back and left leg pain. Plaintiff was also having pain under his left ribs.
10. Dr. Rice testified that he could not render an opinion about plaintiff's ability to work during the lapse of treatment between January 12, 2005 and January 26, 2007. He opined that as of January 12, 2005, the recommendation at that time could more likely than not have placed plaintiff out of work. Likewise, Dr. Rice testified that more likely than not, had the work ability of plaintiff been addressed at the January 26, 2007 visit, he would have placed plaintiff out of work.
11. On February 26, 2007, Dr. Rice recommended epidural steroid injections and physical therapy.
12. Plaintiff's February 26, 2007 consultation with Dr. Rice is the last appointment with Dr. Rice reflected in the record. As of February 26, 2007, plaintiff's symptoms remained similar to those he had had since Dr. Rice began treating him. Dr. Rice opined in his deposition that as of February 26, 2007, plaintiff was capable of light work with frequent changes of *Page 6 
position, limited bending and stooping, and no lifting greater than 20 pounds. However, plaintiff's work ability was not addressed at the February 26, 2007 appointment and plaintiff was not made aware of Dr. Rice's opinion that he was capable of returning to work until Dr. Rice's deposition on May 30, 2007.
13. Plaintiff's current diagnosis from Dr. Rice is lumbar degenerative disc disease with associated chronic pain. Plaintiff's symptoms result from disc derangement at L1-2, with his pain complaints supported by objective findings in an August 24, 1999 discogram performed by Dr. Rice. MRIs in 2001 and 2003 also showed a bulging disc at T11-12, which increased in prominence in the 2003 MRI.
14. A 2007 MRI was unremarkable other than showing degenerative changes.
15. With occasional flare-ups, plaintiff's condition has remained relatively stable throughout the entire time that Dr. Rice has treated Plaintiff, since 1995. There has been no significant change in plaintiff's condition between the 2003 and 2007 MRIs.
16. On March 10, 2004, Dr. Rice completed forms for plaintiff's Social Security disability claim. These forms, as completed, suggested that plaintiff suffered from mild to moderate pain and could work six to eight hours per day, with lifting up to 10 pounds, standing up to 2 hours, sitting up to 4 hours, occasional bending and stooping, and no marked restriction from pain in plaintiff's activities of daily living or ability to concentrate. As Dr. Rice testified, these forms reflected plaintiff's maximum abilities and did not necessarily reflect what plaintiff could handle on an active day-to-day basis.
17. In order to determine more specifically the nature of plaintiff's work restrictions, Dr. Rice has recommended a functional capacity evaluation. *Page 7 
18. Defendants sent plaintiff to Dr. Charles Haworth, a neurosurgeon, for a one-time evaluation on November 14, 2005. Dr. Haworth found no objective basis for plaintiff's pain and physical limitations. Dr. Haworth further found no objective medical reason that would prohibit plaintiff from undertaking gainful employment.
19. The undersigned assign more weight to the testimony and opinion of Dr. Rice than that of Dr. Haworth. Dr. Rice is plaintiff's long-time treating physician, whereas Dr. Haworth saw plaintiff once. Also, Dr. Haworth did not review any of Dr. Rice's treatment notes and only reviewed the 2005 MRI.
20. Plaintiff sought treatment from Dr. Angel Vazquez on February 10, 2004 for depression. Plaintiff presented to Dr. Vazquez with a history of chronic pain which had gotten worse during the year prior to his February 10, 2004 visit. Dr. Vazquez diagnosed plaintiff with major depressive disorder and plaintiff has remained under the care of Dr. Vazquez since his initial visit.
21. Dr. Vasquez is currently prescribing Zoloft for plaintiff in a maintenance dose, and plaintiff is following up with Dr. Vasquez's clinic every four months. As Dr. Vasquez testified, so long as plaintiff remains in pain, he will need to remain on his medication.
22. Dr. Vasquez opined that plaintiff's depression is caused by his chronic pain and his inability to work. In addition to major depressive disorder recurrent, Dr. Vasquez has diagnosed chronic pain disorder in plaintiff. Although he continues to be depressed, at the time of Dr. Vazquez's deposition, plaintiff's mental state had improved and he is now able to return to work from a mental standpoint.
23. Defendants sent plaintiff for a one-time evaluation with Dr. Thomas Gualtieri, a psychiatrist, on May 22, 2007. Dr. Gualtieri is not opposed to a four-week intensive pain *Page 8 
management program for plaintiff, but he believes that long-term pain management would be counterproductive.
24. Dr. Gualtieri agrees that plaintiff is depressed and agrees with Dr. Vazquez's opinion that plaintiff's chronic pain was a cause of plaintiff's depression. Dr. Gualtieri further agrees that plaintiff's treatment up to this point with Dr. Vasquez and his continuing treatment with Dr. Vasquez has been and will continue to be reasonably necessary.
25. Neither Dr. Vasquez nor Dr. Gualtieri believes that plaintiff is malingering or exaggerating his pain symptoms.
26. Defendants sought the instant hearing by filing a Form 33 Request for Hearing on January 9, 2006, contending that plaintiff was no longer disabled and that, to the extent he might be disabled, any disability was no longer related to plaintiff's compensable injury.
27. Plaintiff's current back condition and depression are causally related to the July 8, 1993 compensable injury by accident.
28. Plaintiff is at maximum medical improvement but requires ongoing treatment to address his chronic pain. Plaintiff also requires ongoing medication management for his depression.
29. Plaintiff has not returned to work as of the date of the hearing before Deputy Commissioner Harris. Plaintiff was not aware of Dr. Rice's opinion regarding his ability to return to work after February 2007 until Dr. Rice's deposition taken in May 2007, after the evidentiary hearing with Deputy Commissioner Harris. There is no evidence in the record of any suitable employment being available to plaintiff.
30. Upon information and belief, defendants have initiated vocational rehabilitation for plaintiff. *Page 9 
31. Defendants' prosecution of their Form 33 on the ongoing disability and medical treatment issues related to plaintiff's back condition was reasonable considering the strength of Dr. Haworth's opinions and possible conflict between the medical opinions of Drs. Rice and Vazquez regarding plaintiff's physical and mental state and plaintiff's successful application to become a foster parent which required plaintiff to certify he was in good mental and physical health.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff's current condition is causally related to his compensable injury of July 8, 1993. Plaintiff's depression and chronic pain disorder are direct and natural consequences of his compensable back condition and, as such, are compensable conditions themselves.Starr v. Charlotte Paper Co., 8 N.C. App. 604, 175 S.E.2d 342 (1970).
2. This matter was originally accepted pursuant to a Form 21 approved by the Industrial Commission on June 13, 1994. Thereafter, the Commission awarded plaintiff ongoing temporary total disability benefits by its final, enforceable Opinion and Award of November 23, 2004. Once plaintiff establishes disability through an award of the Commission, plaintiff is presumed disabled until he returns to suitable employment.Radica v. Carolina Mills, 113 N.C. App. 440, 439 S.E.2d 185 (1994). The burden is on defendants to produce evidence that suitable jobs are available for plaintiff and that plaintiff is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., 142 N.C. App. 259,545 S.E.2d 485 (2001)aff'd 354 N.C. 355, 554 S.E.2d 337 (2001). In the case at hand, *Page 10 
defendants have not produced sufficient evidence to meet their burden.Id. Plaintiff is entitled to ongoing temporary total disability benefits.
3. Under the Workers' Compensation Act, a claimant is entitled to recover medical expenses as may reasonably be required to effect a cure or give relief to his injury. N.C. Gen. Stat. § 97-25; Little v. PennVentilator Co., 317 N.C. 206, 345 S.E.2d 204 (1986). Plaintiff's injury took place prior to July 5, 1994, and, therefore, plaintiff is entitled to have medical expenses incurred as a result of the on-the-job injury provided by the employer notwithstanding that there has been no material change in his medical condition. Hyler v. GTE Products Co.,333 N.C. 258,425 S.E.2d. 698 (1993). Plaintiff is entitled to receive medical treatment for his back provided by defendants so long as it tends to effect a cure, provide relief, or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
4. Plaintiff is entitled to medical treatment for his depression and chronic pain disorder that is reasonably required effect a cure, provide relief, or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
5. Plaintiff is not entitled to attorney's fees under N.C. Gen. Stat. § 97-88.1.
6. In the discretion of the Full Commission, plaintiff is entitled to an attorney's fee under N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD *Page 11 
1. Defendants shall continue paying temporary total disability compensation to plaintiff in the amount of $322.68 per week until plaintiff returns to work or until further order of the Commission.
2. Drs. Rice and Vasquez are hereby designated as plaintiff's treating physicians and defendants shall authorize and pay for the treatment that said physicians recommend for plaintiff's compensable back condition, depression and/or chronic pain disorder, including but not limited to diagnostic testing, prescriptions, mileage, referrals, and a functional capacity evaluation as recommended by Dr. Rice. Plaintiff shall provide Dr. Rice with a copy of Dr. Gualtieri's report, and Drs. Rice and Vasquez shall exchange records on an ongoing basis. Should Drs. Rice and Vasquez, in consultation with each other, recommend pain management for plaintiff, then defendants shall authorize and pay for it.
3. Defendants shall pay all medical expenses incurred or to be incurred resulting form plaintiff's compensable back condition, depression and chronic pain disorder so long as it tends to affect a cure, give relief, or lessen plaintiff's disability.
4. Defendants shall pay to plaintiff's counsel an attorney's fee of $10,750.25.
5. Defendants shall pay the costs. As part of their costs, if they have not done so already, defendants shall pay an expert witness fee to each of the following providers, in the amount shown or the amount actually billed, whichever is less: $1,402.50 to Dr. Rice; $515.00 to Dr. Haworth; $843.75 to Dr. Vasquez, and; $656.25 to Dr. Gualtieri.
This the 13th day of June, 2008.
S/___________________ DIANNE C. SELLERS COMMISSIONER *Page 12 
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/___________________ DANNY LEE McDONALD COMMISSIONER *Page 1